Dillard NOLAN, Plaintiff,

v.

AMERICAN SURETY COMPANY OF NEW YORK, Defendant.

No. 1113.

United States District Court
E. D. Kentucky,
at London.

Sept. 12, 1963.

---

Cawood Smith, G. E. Reams, Harlan, Ky., for plaintiff.

Woodward, Hobson & Fulton, John Sandidge, Louisville, Ky., Hamm, Taylor & Milby, London, Ky., for defendant.

HIRAM CHURCH FORD, Senior District Judge.

On September 20, 1956, the Plaintiff Dillard Nolan was seriously and permanently injured by a collision with a motor vehicle described as a dump truck, hereinafter referred to as "the truck", which was operated by one Burley Howard, for which Plaintiff secured judgment against Burley Howard in the sum of $23,018.95, affirmed by the Kentucky Court of Appeals on January 20, 1961 (Nolan v. Nally, Ky., 342 S.W.2d 400).

By this action, the Plaintiff seeks to recover from the Defendant the amount of his judgment under the provisions of a comprehensive insurance policy which was issued by defendant to Sam Nally and Nick Boone, doing business as Nally & Boone, and which was in full force and effect at the time of the accident. Defendant denies that the operator of the truck was within the coverage of the insurance policy relied upon by the Plaintiff.

The provisions of the insurance policy which seem pertinent upon the question here presented are as follows:

"INSURING AGREEMENTS

"I.  Coverage A.—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident, and arising out of the ownership, maintenance or use of any automobile.

"Coverage B.—Property Damage Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile."

\*     \*     \*     \*     \*     \*

"III.  Definition of Insured.

"The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a nonowned automobile in the business of the named insured.

\*     \*     \*     \*     \*     \*

"CONDITIONS

\*     \*     \*     \*     \*     \*

"3.  Automobiles Defined, \* \* \*

"(a) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned Automobile— an automobile owned by the named insured;

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured pro-

vided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile."

It appears from the evidence that, at the time of the accident to the plaintiff the named insured Nally & Boone were owners of a rather large rock crushing enterprise in Harlan County, Ky., carried on at considerable distance from the highway where the accident occurred. They maintained a lot located near the highway for the storage of crushed rock produced by the crushing outfit located some distance from the storage lot. Numerous trucks were used in transporting the crushed stone from the crusher to the storage lot near the highway, some of which were owned by Nally & Boone and some were hired from other persons.

The business of this enterprise was entirely in charge of one Fred Hagan who, though not an executive of Nally & Boone, was employed by them and served as their general superintendent of operations, including authority to hire and supervise the operation of the trucks engaged in carrying on the business. Among the trucks engaged in the work was a truck owned by Fred Hagan, the superintendent, for the use of which he received compensation on an hourly basis. On the day of the accident the crusher was shut down at about 2 P.M., and the entire operation was discontinued to await repairs to the crusher. At that time, Fred Hagan, the superintendent, took his own truck and, with its regular driver L. C. Nolan, (also an employee of Nally & Boone) and delivered crushed stone to a customer at Verda, Ky., for which Mr. Hagan was paid on a tonnage basis, and he personally paid the driver for his services.

When late in the afternoon the driver returned with Mr. Hagan's truck from the trip to Verda, he called Mr. Hagan's attention to a defect in the spring of the truck which needed repairing. At the direction of Mr. Hagan, the driver took the truck to a garage located on the highway which was operated by Burley Howard. The garage was an entirely different operation from that of Nally & Boone. Mr. Hagan followed his truck to the garage in his own car and employed the garage owner to repair the truck for which he paid him in advance and arranged with him to deliver the truck when repaired to a point near the storage lot where it would be available for use the next morning in carrying on the transfer of the rock from the crusher to the lot. Mr. Howard, the garage operator, completed the repairs, tested the truck by driving it a short distance and found it properly repaired, and parked it near the highway in front of his garage; after eating his supper at his residence nearby, he returned to the garage, took charge of the truck, moved it into the highway to carry out the delivery of it to the point near the storage lot and, upon his entrance to the highway, the collision which caused the injury and damage to the Plaintiff, Dillard Nolan, occurred.

It seems clear from the evidence that in the delivery of his truck to the garage by Mr. Hagan for repairs and in arranging for its delivery to the point near the storage lot for use the next morning, Mr. Hagan was not acting as supervisor, superintendent or agent for Nally & Boone, nor within the scope of his employment by them, but solely in his own interest and in connection with his own property, and that the permission which he gave to Mr. Howard to deliver the truck was not permission of Nally & Boone but was permission personally on the part of Mr. Hagan.

In view of the above findings, I am of the opinion that at the time of the accident Mr. Howard was not operating the truck with the permission or in the service of Nally & Boone, but only with the permission and in the personal service of Fred Hagan, and hence Burley Howard was not an insured under the insurance

policy here involved under the definition of "insured", as set out in the policy.

Since it appears without dispute that Mr. Hagan, as owner of the truck, was receiving operating allowance for the use of it, it was not included in the term "hired automobile", as defined in the policy.

For the reasons indicated, I am of the opinion that Burley Howard was not "an insured" covered by the policy of insurance herein relied upon by the Plaintiff and that the so-called rider of July 1, 1956, endorsed on the policy has no application here.

Let judgment be entered dismissing the complaint.